IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KATHY MITCHELL,**

    **Plaintiff,**

    vs.

**UNUM LIFE INSURANCE
COMPANY OF AMERICA,**

    **Defendant.**

Case No. 2:21-cv-3888

Judge James L. Graham

Magistrate Judge Elizabeth P. Deavers

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Unum Life Insurance Company of America's Motion to Compel (ECF No. 16), Plaintiff Kathy Mitchell's Memorandum in Opposition (ECF No. 18) and Defendant's Reply (ECF No. 20).  For the reasons that follow, Defendant's Motion to Compel is **GRANTED IN PART and DENIED IN PART**.

**I.**

Plaintiff, Kathy Mitchell, alleges claims for breach of contract and bad faith under Ohio law arising out of Defendant Unum Life Insurance Company's termination of her long-term disability benefits.  (*See generally*, Compl. (ECF No. 1).)   Defendant circulated its First Set of Interrogatories and Request for Production of Documents ("RFP") to Plaintiff's counsel on December 1, 2021.  (Certification, ECF No. 16-1, at ¶ 3.)  Plaintiff responded on January 13, 2022, providing both written responses as well as limited documents.  (*Id*. at ¶ 4.)   Through counsel, Defendant informed Plaintiff's counsel on January 24, 2022, that it considered

Plaintiff's responses deficient in a number of respects. (*Id*. at ¶ 5.) Specifically, Defendant indicated that Plaintiff failed to produce any of the requested medical records and did not fully respond to discovery requests related to her capacity for travel, her tax returns, and alleged damages. (*Id*., ECF No. 16-4.) Defendant then requested that Plaintiff execute releases so that it could obtain medical records directly from the treating providers identified by Plaintiff, whether in her initial disclosures or at deposition "[t]o facilitate the expedient production. . . ." (*Id*.)

Plaintiff supplemented her responses on February 1, 2022. The supplemental documents did not include any medical records, and Plaintiff's counsel declined Defendant's invitation to have Plaintiff execute releases. (*Id*. at ¶ 6.) Plaintiff stood on her objection to responding fully to the requests related to "any and all times" she has traveled further than 100 miles from her home "from August 2013 forward." (*Id*., ECF No. 16-5.) She likewise continued to object to Defendant's request for all income tax information from 2013 forward. Nevertheless, because of Defendant's assertion that her tax information is relevant to her claim of hardship following the loss of her benefits, Plaintiff provided her 2020 tax return.[1]

By letter dated March 11, 2022, Plaintiff supplemented her prior responses to Defendant's RFPs and produced 90 pages of medical records. Plaintiff represents that she has produced all medical records from January 1, 2021, forward. (ECF No. 18, at p. 1.)

---

[1] Defendant had also asked for documents relating to (1) Plaintiff's alleged impairment of credit; (2) the alleged loan taken out against a classic car; and (3) the alleged difference in interest rates. (Mot. to Comp. Ex. A-5 at Page ID# 121.) Plaintiff represented that she "has produced all that there is to produce" and these documents "do not exist." (Opp. Br. at Page ID# 129–30.) Defendant accepted Plaintiff's representation that there are no documents responsive to these alleged damages and withdrew RFP No. 7 and Interrogatory No. 17 from consideration in its Motion to Compel. (ECF No. 20, at Page ID# 140-141.)

## II.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes a certification that the movant has, in good faith, conferred or attempted to confer with the party failing to respond to the requests. Fed. R. Civ. P. 37(a)(1). The Court is satisfied that this prerequisite has been satisfied, as Defendant has attached several exhibits documenting the extensive meet and confer correspondence between the parties.

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302

(S.D. Ohio 2010) (citation omitted).  If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015).  "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citations omitted).  Despite being construed broadly, the concept of relevance is not unlimited.  *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009).  Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses."  *Doe*, 2018 WL 1373868 at *2 (citations omitted).  Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues," the standard has not been satisfied. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case,

4

the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'restoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* at *6 (citing *Surles*, 575 F.3d at 305) (emphasis in original).

## III.

### A. Interrogatory No. 4 and RFP No. 2 (Medical Records)

In Interrogatory No. 4, Defendant requested that Plaintiff identify the health care practitioners with whom she consulted with respect to the conditions for which she claims disability, and in RFP No. 2 asked Plaintiff to produce all documents relating to medical treatment since August 2013, the date she claimed that she could no longer work due to her disabilities.

In her responses, Plaintiff referred Defendant to her initial disclosures, in which she identified Ohio treating providers along with her new treating providers after moving to Florida in late 2020 or early 2021. Plaintiff eventually produced all medical records from January 1, 2021 but objected to the production of documents from August 2013 forward as "needlessly duplicative" because Defendant already has these records in its claim file. Plaintiff argues that

5

"between 2013, when [she] submitted her claim and May 24, 2021, when [Defendant] closed her appeal, [Defendant] had the right to collect, and as far as [she] is aware did collect every single medical record that it deemed relevant to [her] claim." (Pl's Mem. Opp., at p. 2.)  Plaintiff was "not aware of any relevant medical information that was available during the claim period that is not already included within Defendant's claim file." (*Id*. at n.2.)   She explains that her claim file, which presumably has been produced to her by Defendant, is more than 3,000 pages which mostly consists of medical records.   Plaintiff argues that Defendant has not explained by the records it has in its position – the same records it relied on to administer her claim – are now insufficient, or how records from 2013 will be of value in determining whether she was disabled as of November 13, 2020.

      For its part, Defendant maintains that the medical records are clearly at issue in this lawsuit.  It seeks to have Plaintiff sign releases and argues that requiring a Plaintiff to execute a release authorization for medical records is the most efficient and economical way for a Defendant to obtain those records.  Although Defendant acknowledges Plaintiff's contention that it "had the right to collect and, as far as [she] knows did collect every single medical record it deemed relevant" during the life of the claim, Defendant asserts that Plaintiff can point to no case law suggesting that it cannot obtain information even she does not dispute is relevant.  Defendant, conspicuously, does not address head on Plaintiff's argument that it already has the records in its possession such that reproduction would be needlessly duplicative.

      Under the circumstances, the Court agrees with Plaintiff.  Defendant seems to speculate that there may be additional records related to her claims of disability in the possession of her former healthcare providers that are not contained in the claim file and focuses on obtaining releases, arguing that it would not be burdensome for Plaintiff.  Yet, Defendant fails to

6

demonstrate how the records it collected over seven years while administering her claim are now suddenly insufficient for its defense of this matter. Moreover, as Plaintiff points out, the issue in this case is whether Plaintiff was disabled as of November 13, 2020. Medical records from 2013 that are not already in the claim file are unlikely to bear on this central issue. Compelling Plaintiff to execute releases, even if Defendant serves them, followed by the healthcare providers collecting and responding with, at best largely duplicative and at worst completely irrelevant records, creates an undue burden for everyone involved and is not proportional to the needs of the case. *See Surles ex rel Johnson*, 474 F. at 305 (holding federal courts must determine if the burden or expense of discovery "outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."); Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court must limit the frequency or extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]") Defendant's Motion to Compel is **DENIED** as to Plaintiff's medical records.

    **B. Interrogatory No. 14 (Travel)**

    In In Interrogatory No. 14, Defendant asked Plaintiff to identify "any and all times that [she] traveled further than 100 miles from [her] home from August 2013 forward," including in her response the destination, dates, method, and purpose of the travel. Defendant subsequently agreed to limit the time period of the interrogatory to November 2020 (the date that benefits were discontinued) through the present. Defendant maintains that the ability to endure lengthy travel

by driving and other forms of transportation is relevant to the question of Plaintiff's functional capacity.

Plaintiff acknowledges that Defendant's position about enduring lengthy travel might be relevant to her functional capacity, but counters it ignores the nature of her disability. Plaintiff suffers from narcolepsy and obstructive sleep apnea which, according to her, cause her to fall asleep during the day. She contends that she would be able to sleep during any trip in which she was not driving such that discovery about all travel will prove nothing. She also questions the breadth of the request as it seeks information about the "destination" and "purpose" of the travel and argues that these matters are not probative of her functional capacity. The Court agrees.

Plaintiff points out that if the Interrogatory was limited to asking her to identify the number of times she herself has driven more than 100 miles, her answer would be none. (Pl's Mem. in Opp. at p. 4, n.4.) The Court concludes that instances of traveling otherwise and information about the purpose and destination of the travel have no bearing on the issues in this case. The Social Security cases cited by Defendant, *Ann S. v. Saul*, No. 19 CV 1661, 2021 WL 354001, *6 (N.D. Ill. Feb. 2, 2021) and *Elizondo v. Saul*, No. 5:19-CV-162, 2021 WL 4027729 (S.D. Tex. Mar. 30, 2021), are inapposite. These unreported, out-of-Circuit cases involve the complex determination of disability under specific standards and regulations under the Social Security Act and have nothing to do with the scope of discovery. Defendant's Motion to Compel is **DENIED** with respect to Plaintiff's travel.

**C. RFP No. 3 (Tax Returns)**

In RFP No. 3, Defendant requested that Plaintiff provide her federal income tax returns from 2013 through the present. Plaintiff objected to this request as overbroad, unduly burdensome, and irrelevant, but agreed to provide her 2020 tax return as evidence of her claim of

8

hardship following the loss of her benefits in 2020. Defendant argues it needs the prior years of tax returns because without them, it has no basis for comparison or understanding the alleged losses and financial burdens that Plaintiff claims she suffered after her benefits were discontinued in 2020. Defendant also emphasizes in its Reply that the long-term disability policy that governs Plaintiff's claim identifies several categories of deductible sources of income while a claimant is receiving benefits and likewise requires it to reduce benefits based on a claimant's monthly earnings. Defendant also points out, by way of example, it may have an overpayment claim to the extent that Plaintiff's tax returns reflect earnings that were previously unknown and contends Plaintiff's complete tax returns are therefore relevant to her alleged losses and its defenses.

Plaintiff responds that the RFP asking for tax returns from 2013 forward is irrelevant, invades her and her husband's privacy and exceeds the requirements of this litigation. Although she recognizes that tax returns are not privileged from discovery, Plaintiff quotes *Furth v. Zanic*, No. 1:06CV411, 2008 WL 11380207 at *2 (N.D. Ohio Oct. 15, 2008) for the proposition that "many courts have recognized a public policy against unnecessary public disclosure of tax returns arising from the need, if tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." This Court is not persuaded.

Plaintiff has put her economic circumstances at issue in this case. Plaintiff alleges economic losses and financial burden, including impairment of credit, as part of her bad faith claim. She testified in her deposition that she had issues paying for a new home and the related loans after her benefits were terminated in 2020. She seeks compensatory damages for bad faith of not less than $100,000 and punitive damages of not less than $100,000. (Compl., ¶ 22 B. &

9

C.) The Court agrees with Defendant that it could have no basis for understanding her alleged damages in 2020 without a comparison to prior years.

Plaintiff's citation to *Furth* does not advance her cause. In *Furth*, the court began with the recognition that courts have uniformly held that tax returns are not privileged from discovery. 2008 WL 11380207 at *2 (noting too "the Sixth Circuit does not believe tax returns should be exempt or accorded special privilege from discovery." (citation omitted)). The court went on to adopt the rule from *In re Dayco Corp.*, 99 F.R.D. 616, 625 (S.D. Ohio 1983) that "[d]isclosure of tax returns is appropriate if they are significantly relevant to issues raised in the case, or if other appropriate factors are present." It noted that the rule "effectively balances the need to avoid unnecessary disclosure of tax forms while allowing district courts the necessary discretion to evaluate, on a case-by-case basis, whether disclosure is warranted." *Id*. The court found that the "significantly relevant" inquiry prevents tax returns from being disclosed if they are merely tangentially related to a party's claim or defense but that the second condition allows courts leeway to allow discovery of tax returns if they are not "significantly relevant" to issues in the case but there are other reasons for their disclosure. *Id*. The court concluded that certain tax returns were significantly related to the issues in the case including damages for, *inter alia*, breach of contract and ordered them disclosed.

Here, similarly, Plaintiff alleges breach of contract and bad faith. She seeks no less than $200,000 in compensatory and punitive damages on the bad faith claim for harm she suffered, including impairment of credit. Moreover, the long-term disability policy that governs Plaintiff's claim identifies several categories of deductible sources of income while a claimant is receiving benefits and likewise requires it to reduce benefits based on a claimant's monthly earnings. Defendant may have an overpayment claim to the extent that Plaintiff's tax returns reflect

10

earnings that were previously unknown. Plaintiff's tax returns are therefore significantly relevant to her alleged losses and its defenses. *Furth*, 2008 WL 11380207 at *3; see also *Sutherland v. City of Cincinnati*, No. 1:12-cv-205, 2013 WL 2255885 at *4 (S.D. Ohio May 22, 2013 (compelling production of tax returns after plaintiff left her employment for alleged disability, concluding that the information was relevant because plaintiff put her income at issue); *Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*, 94 F.R.D. 113, 118-121 (S.D. Ohio 1982) (same).

Nevertheless, the Court concludes that the RFP is overly broad and unduly burdensome in that it reaches back to 2013. Defendant speculates that it may identify a deductible sources of income that Plaintiff received while she was receiving benefits for which it may have an overpayment claim. But, at this point, it is just that: speculation. The Court finds that Plaintiff should produce her tax returns from 2018[2] through the present. This date range should give Defendant sufficient information to compare her income with prior years and to understand Plaintiff's alleged damages. If Defendant sees any indication of deductible source of income for which it may try to assert an overpayment claim, it may return to the Court for additional relief.

## IV.

For the foregoing reasons, Defendant's Motion to Compel (ECF No. 16) is **GRANTED IN PART and DENIED IN PART**. Plaintiff is **DIRECTED** to respond to RFP No. 3 with respect to the years 2018 to the present.[3]

---

[2] In 2018, Unum last reviewed Plaintiff's claim and again concluded that she was disabled from any occupation before it terminated her benefits in 2020. (Compl., at ¶ 9.)

[3] To the extent she has not already done so, Plaintiff is **DIRECTED** to sign her responses to the Interrogatories as required. Fed. R. Civ. P. 33(b)(5).

**IT IS SO ORDERED.**

**DATED:  June 27, 2022**

/s/ *Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**UNITED STATES MAGISTRATE JUDGE**