## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**KATHY MITCHELL**,

             Plaintiff,

    **v.**

**UNUM LIFE INSURANCE
COMPANY OF AMERICA,**

            Defendant.

**Case No. 2:21-cv-3888**

**Judge Graham**

**Magistrate Judge Deavers**

### OPINION AND ORDER

This action is filed by Kathy Mitchell, a former employee of The Ohio State University ("OSU"). Mitchell is a beneficiary of a group policy ("the Policy") entered between OSU and Defendant Unum Life Insurance Company of America ("Unum").  Under the terms of the Policy, a beneficiary is entitled to long-term disability benefits in the first 24 months of payments if they are "limited from performing the **material and substantial duties** of [their] **regular occupation** due to [their] **sickness or injury** . . . ." Claim File, Doc. 26-4 at 94 (emphasis in original). After receiving 24 months of payments, a beneficiary is entitled to long-term disability benefits if "Unum determines that due to the same sickness or injury, [they] are unable to perform the duties of any **gainful occupation** for which [they] are reasonably fitted by education, training or experience." *Id.* (emphasis in original).

Mitchell worked as a patient revenue cycle specialist at an OSU hospital until symptoms related to anemia and narcolepsy caused her to leave in August 2013. *See* Doc. 26-2 at 62-63. Unum's vocational specialist determined that this occupation required exerting up to 10 pounds of force to lift, carry, push, pull, and move objects; sitting with occasional walking and standing;

occasional reaching upward and downward; frequent handling, fingering, and keyboard use; directing, controlling, or planning activities for others; and dealing with people. Doc. 26-18 at 9.

In a letter dated December 19, 2013, Unum found that Mitchell's narcolepsy prevented her from performing the duties of her regular occupation and that she was entitled to long-term disability benefits starting August 21, 2013. Doc. 26-4 at 161-166. Mitchell continued to receive long-term disability benefits from Unum, with one short break, until November 13, 2020, when Unum found she no longer was limited from performing the demands of her regular occupation.[1] Doc. 26-18 at 8-14. Unum affirmed this determination in an internal reconsideration and appeal.

Mitchell filed suit, asserting that Unum breached the Policy and acted in bad faith. This matter is now before the Court on two motions for partial summary judgment. Mitchell moves for summary judgment on her breach of contract claim, Doc. 29, and Unum moves for summary judgment on the bad faith claim, Doc. 30.

## I.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential

---

[1] Unum applied the "regular occupation" definition of disability throughout Mitchell's claim even though the "any gainful occupation" definition applied after 24 months of payments. Ultimately, this is of no consequence because Unum's finding that Mitchell could perform her regular occupation necessarily means that she did not satisfy the "any gainful occupation" definition.

2

element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

## II.    Discussion

### A.  Plaintiff's Motion for Partial Summary Judgment

Mitchell moves for summary judgment on her claim of breach of contract. The only claim for breach of contract articulated in her complaint is Defendants' termination of the payment of benefits notwithstanding the fact that she allegedly continues to be disabled under the terms of the Policy. Mitchell's complaint pleads her breach of contract claim as follows:

> Count I – For Breach of Contract
>
> . . .
>
> 14. Mitchell is an intended third-party beneficiary under the Policy.
>
> 15. Mitchell remains disabled under the Policy and entitled to a monthly benefit.
>
> 16. Unum breached the terms of its Policy by closing Mitchell's claim and terminating her monthly benefit.

Doc. 1 at ¶¶ 14-16.

In her motion for partial summary judgment, Mitchell asks the Court to render summary judgment on her breach of contract claim because upon appeal of the denial of her claim, Unum failed to consult a health professional different from the one who originally recommended claim termination. Inasmuch as the Complaint fails to assert such a claim, the motion must be denied. Nevertheless, Plaintiff's allegations about Unum's failure to follow required procedures on appeal are relevant to the Court's consideration of Unum's motion for summary judgment on Plaintiff's bad faith claim, *see infra* at pages 7-8.

**B. Defendant's Motion for Partial Summary Judgment**

Unum moves for summary judgment on Mitchell's bad faith claim and her related claims for punitive damages and attorneys' fees.

An insurer has a legal duty "to act in good faith in the handling and payment of the claims of its insured." *Great West. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 979 (S.D. Ohio 2009) (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1316 (Ohio 1983)). The standard for determining bad faith is "reasonable justification." *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399-400 (Ohio 1994). "[A]n insurer fails to establish good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Id.* at 400.

There are two types of insurer bad-faith claims. The first occurs when the insurer lacks reasonable justification for denying a claim and the insurer has actual knowledge of that fact. *Poneris v. Pennsylvania Life Ins. Co.*, No. 1:06-CV-254, 2007 WL 3047232, at *2 (S.D. Ohio Oct. 18, 2007) (citing *Motorists Mut. Ins. Co. v. Said*, 590 N.E.2d 1228, 1236 (1992)). The second occurs when an insurer denies a claim without determining whether there is reasonable justification for the denial. *Id.*

An insurer lacks reasonable justification for its denial when its refusal to pay is predicated on an arbitrary and capricious belief that the insured is not entitled to coverage. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E. 2d 1315, 1320 (Ohio 1983); *Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955, 979 (S.D. Ohio 2009). Arbitrary and capricious decisions are those "made without consideration of or regard for facts, circumstances, fixed rules, or procedures." *See Marshall v. Colonial Ins. Co.*, 2016-Ohio-8155, ¶ 42, citing Blacks' Law Dictionary (10th Ed. 2014); *Superior Credit Union, Inc. v. CUMIS Ins. Soc'y, Inc.*, No. 1:19-CV-073, 2019 WL 5557343, at *5 (S.D.

Ohio Oct. 28, 2019), report and recommendation adopted, No. 1:19CV73, 2019 WL 6131267 (S.D. Ohio Nov. 19, 2019) ("A bad faith claim may be stated where the plaintiff alleges that the insurer 'acted in bad faith by failing to investigate his claim, failing to apply provisions of [the] policy, and failing to interpret the policy in [the insured's] favor.'").

Here, the bad faith claim is multi-faceted. Mitchell asserts in her complaint that Unum acted in bad faith by: (1) terminating her claim despite knowing that her narcolepsy had not improved; (2) failing to exercise its right to have her examined by an independent physician; and (3) denying the claim in reliance on in-house physicians who were not qualified to opine on narcolepsy. Doc. 1 at ¶ 20.

### 1. Knowledge of Severity of Narcolepsy

Mitchell asserts in her complaint that Unum denied her benefits despite knowing that her Narcolepsy had not improved. Unum argues that the uncontested medical evidence shows otherwise. Unum adopted the opinions of two physician consultants who reviewed Mitchell's file and concluded her narcolepsy was not disabling. Their opinions indicate that Mitchell's narcolepsy was improving. In 2017, she was taking Xyrem and Zolpidem for narcolepsy. She ceased taking Xyrem in 2019. In 2020 she began Lexapro, which reportedly improved her mood, energy level, and sleep and left her feeling great. While Dr. Kim continued to report that Mitchell was disabled, he provided no recent medical evidence to support his conclusion.

### 2. Failure to Conduct Independent Physician Examination

Unum asserts that its decision to rely on reviews of Mitchell's medical file does not establish bad faith. The Policy permits Unum to have Mitchell examined, it does not require Unum to do so. *See* Doc. 26-4 at 94. Unum decided that Mitchell's claim did not require an independent physician examination.

### 3. Qualifications of Unum's Physician Consultants

Mitchell asserts that Unum's physician consultants were not qualified to evaluate her alleged disability because they are not sleep experts. Both are board-certified in internal medicine and well qualified to assert Mitchell's claimed disability. The Court agrees that a reasonable jury could not find that Unum was guilty of bad faith for choosing to have Mitchell evaluated by specialists in internal medicine, but the choice of these two specific physicians to evaluate her disability on appeal involves issues in addition to their certified medical specialties.

### 4. Failure to Consult Different Physicians on Appeal

Although Mitchell did not plead a breach of contract claim arising out of Unum's failure to follow the requirements of its Policy regarding appeals, the record now contains all of the facts relating to the appeal process and the Court concludes that those facts are relevant to Mitchell's bad faith claim and should be considered in ruling on Unum's motion for partial summary judgment. The appeal procedures outlined in the Policy create a clear expectation that upon appeal, the policyholder will receive a de novo review of the evidence by a new decision maker. That requirement begins with the statement that "no deference will be afforded to the initial determination," and continues as follows:

> The review will be conducted by Unum and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on the grounds of a medical judgment, Unum will consult with a health professional with appropriate training and experience. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate.

Doc. 26-4 at 116.

Unum violated these requirements by assigning the responsibility for deciding the appeal to the very same individuals who made the initial determination: Nurse Herkel, Dr. Weinstein, and

Dr. Palermo. A jury could well find that Unum's blatant disregard of its own rules was arbitrary and capricious, and that Unum acted in bad faith in denying her appeal. Moreover, Unum's failure to follow its Policy requirements regarding appeals also taints its decisions regarding the severity of Mitchell's narcolepsy and its failure to conduct an independent physician examination. Unum's motion for partial summary judgment is denied.

### III.     Conclusion

For the above reasons, Mitchell's motion for partial summary judgment, Doc. 29, and Unum's motion for partial summary judgment, Doc. 30, are **DENIED**.


**IT IS SO ORDERED**.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: January 24, 2023